**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**


**WILLIAM STROUD, JR.,**

       **Plaintiff,**

**vs.**                           **Case No. 1:09cv234-MP/WCS**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

       **Defendant.**

_____/


## REPORT AND RECOMMENDATION

This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D. Loc. R. 72.2(D). It is recommended that the decision of the Commissioner be reversed and that Plaintiff's application for benefits be granted.

**Procedural status of the case**

Plaintiff, William Stroud, Jr., applied for disability insurance. His last date of insured status for disability benefits was December 31, 2010. Plaintiff alleges disability due to pain in his back and legs, diabetes, and high blood pressure, with onset on

August 8, 2006. Plaintiff was 48 years of age on the date of alleged onset, has three

years of college, vocational training as a correctional officer, and has past relevant work

as a letter carrier for the postal service. The Administrative Law Judge found that

Plaintiff had the residual functional capacity limited to walking and standing 4 hours in

an 8 hour day, with other limitations, can do work in a number of job identified by the

vocational expert (office helper, gate guard, toll collector, and food and beverage order

clerk), and thus was not disabled.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by

substantial evidence in the record and premised upon correct legal principles. Chester

v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a

scintilla, but less than a preponderance. It is such relevant evidence as a reasonable

person would accept as adequate to support a conclusion." Bloodsworth v. Heckler,

703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d

1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if

supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir.

2002). "If the Commissioner's decision is supported by substantial evidence we must

affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232,

1240, n. 8 (11th Cir. 2004) (citations omitted). The court must give "substantial

deference to the Commissioner's decision." Dyer v. Barnhart, 395 F.3d 1206, 1211

(11th Cir. 2005). "A 'substantial evidence' standard, however, does not permit a court to

uphold the Secretary's decision by referring only to those parts of the record which

support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."  Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' "  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Both the "impairment" and the "inability" must be expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212, 122 S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

The Commissioner analyzes a claim in five steps.  20 C.F.R. § 404.1520(a)-(f):

1.  Is the individual currently engaged in substantial gainful activity?

2.  Does the individual have any severe impairments?

3.  Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.      Does the individual have any impairments which prevent past relevant work?

5.      Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  If the claimant carries this burden, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy.  Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

**Analysis**[1]

**Whether the ALJ erred in failing to fully develop the record**

"Social Security proceedings are inquisitorial rather than adversarial.  It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits . . . ."  Sims v. Apfel,  530 U.S. 103, 110-111, 120 S.Ct. 2080, 2085, 147 L.Ed.2d 80 (2000), citing Richardson v. Perales, 402 U.S. 389, 400-401, 91 S.Ct.

---

[1] Information about medical terms and prescription drugs come from DORLAND'S MEDICAL DICTIONARY FOR HEALTHCARE CONSUMERS, available at: http://www.mercksource.com (Medical Dictionary link) or MEDLINE PLUS, found at: www.nlm.nih.gov/medlineplus/mplusdictionary.htm.  The pages at these websites are not attached to this report and recommendation as the information is relatively well-settled, the precise definitions are not at issue in this case, and the definitions are not likely to be in dispute.

1420, 28 L.Ed.2d 842 (1971). "Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a *basic* obligation to develop a full and fair record." Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997) (emphasis added), *citing*, Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). This basic duty exists whether or not the claimant is represented. Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995) (citation omitted). Additional evidence, however, is not necessary if the record contains sufficient evidence to make a decision. Wilson v. Apfel, 179 F.3d 1276, 1278 (11th Cir. 1999).

Plaintiff contends that the signature page from a letter dated October 24, 2007, from May Montrichard, M.D., Plaintiff's treating physician, is missing. Doc. 25, p. 6, citing R. 420. Defendant has shown that the complete letter, with the signature page, is found at R. 566-567.

Plaintiff also argues that the attachments referenced in a letter from Dr. Montrichard dated September 11, 2007, are missing. *Id.*, p. 7, citing R. 421-422. Plaintiff argues that among the missing documents referenced in the September 11, 2007, letter were Dr. Zhou's evaluation and a functional capacity assessment by Southeastern Integrated Medical Group. *Id.*

Dr. Zhou's evaluation is in this record. R. 545-548. The functional capacity assessment by Southeastern Integrated Medical Group seems to be missing. As will be seen ahead, the record is sufficiently complete for this court's review without this undated functional capacity assessment.

Plaintiff also points out that the record contains only the first page of a letter from The Spine and Neurosurgery Center to Dr. Montrichard dated February 11, 2004. *Id.* The first page of that letter states that Plaintiff had been referred for a neurosurgical consultation for complaints of moderate to severe low back pain with radiation down both legs to his ankle on the right and his knee on the left. R. 382. Plaintiff reported some swelling of his right calf on occasion and "no weakness in his leg except during severe pain spells." *Id.* He also reported "some thoracic pain during severe low back spasms." *Id.* Plaintiff said his pain was aggravated by standing, and relieved by heat, hot tubs, and lying down. *Id.* He said he had had some benefit from physical therapy. *Id.* Plaintiff was still working as a letter carrier. *Id.* There obviously was more to this report. As will be discussed ahead, as noted by Drs. Montrichard and Zhou, Dr. Stevenson, one of the physicians at the Spine and Neurosurgery Center, apparently recommended that Plaintiff undergo surgery. Since that fact is established in other parts of the record, there is no reason to remand to acquire the missing pages of this report.[2]

---

[2] Defendant argues that a record from February, 2004, predates the onset date by about two and one-half years and thus is not particularly relevant. That argument is not persuasive. Relevance in Social Security disability cases has no bright line of demarcation. Though healing often occurs, especially in younger people, illness and injury have a way of growing worse over the years. It is the human condition. At some point, of course, a particular medical record may be irrelevant because too remote to have any bearing upon the claimant's current condition. But the test for relevance is a familiar one, whether the medical record has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. This court must look at the entire record, and all of the *relevant* evidence, as it applies the substantial evidence standard. Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, Plaintiff argues that although the hearing was held on September 17, 2008, the treatment records from Dr. Montrichard stop in November, 2006, 22 months earlier. *Id.* Plaintiff argues that the ALJ had a duty to acquire the more current treatment records from Dr. Montrichard. *Id.* The failure of the ALJ to acquire 22 months of the Dr. Montrichard's records ordinarily would require a remand, especially since Dr. Montrichard is a treating physician. For the reasons set forth ahead, however, Dr. Montrichard's opinion is fully supported by the medical records at hand and there is no reason to further delay resolution of this case by a remand.

**Whether the ALJ erred in failing to give great weight to the opinion of Dr. Montrichard, Plaintiff's treating physician**

May Montrichard, M.D., is a family physician and has been Plaintiff's treating physician. On May 1, 2006, Dr. Montrichard determined that Plaintiff has "an impairment rated as 20% Lumbar multi-level discopathy with radicular symptoms," a 2% impairment of the thoracic spine, and a 10% impairment of the cervical spine, for a whole body impairment of 29%. R. 365. In support of this opinion, Dr. Montrichard noted the following objective medical evidence:

> Diagnostics reviewed include 05/13/92 cervical MRI revealing central HNP [herniated nucleus pulposus[3]] C5-6 causing mild encroachment upon the central canal and prominent degenerative disc disease and hypertrophic spurring mildly compromising the central canal and both foramen. A 2/04/03 thoracic MRI revealed diffuse mild congenital spinal stenosis[4] is identified [sic], there is acquired disc bulge identified at multiple levels with

---

[3] A herniated nucleus pulposus is a slipped disk along the spinal cord. The condition occurs when all or part of the soft center of a spinal disk is forced through a weakened part of the disk. DORLAND'S MEDICAL DICTIONARY FOR HEALTHCARE CONSUMERS.

[4] Stenosis is an abnormal narrowing of a duct or canal. DORLAND'S MEDICAL DICTIONARY FOR HEALTHCARE CONSUMERS.

mild central canal stenosis at L3-4, L4-5 and L5-S1, neural foraminal narrowing is identified from the levels of L3-4 through L5-S1, the neural foraminal narrowing is worse at L5-S1, moderate to marked severity bilaterally. A 2/11/04 lumbar MRI revealed mild lumbar stenosis at L4-5 and L5-S1, with moderate bilateral neural foraminal narrowing at L4-5 and L5-S1. Patient was seen [by] Dr. Stevenson, a neurologist, who has recommended Mr. Stroud for multi-level decompression surgeries.

R. 365. The recommendation that Plaintiff undergo multi-level spinal surgery from Dr. Stevenson probably was contained on the page or pages missing in this record from the February 11, 2004, letter to Dr. Montrichard from The Spine and Neurosurgery Center.

A few months earlier, on March 22, 2006, Dr. Montrichard filled out a "Duty Status Report" for the United States Department of Labor. R. 374. She said that Plaintiff was capable of sitting only 2 to 4 hours per day, standing for 2 to 5 hours a day, and could walk only 1 hour a day. *Id.* She thought that Plaintiff could not drive a motor vehicle because he had to use narcotics. *Id.* She related these impairments to injuries from a postal motor vehicle accident in 1991. *Id.*

On July 12, 2007, Dr. Montrichard filed out a similar "Duty Status Form." R. 419. She thought that Plaintiff's impairments had become more severe. *Id.* She thought that Plaintiff could sit intermittently only 2 hours a day, could stand intermittently for only 15 minutes, and could not walk at all. *Id.* She said that his impairments included cervical and lumbar spasms, cervical and lumbar disc disease, diabetes, and hypertension. *Id.* She did not advise Plaintiff to resume his work. *Id.*

The Administrative Law Judge gave little weight to the opinion of Dr. Montrichard. R. 26. The ALJ said that Dr. Montrichard had "apparently overlooked numerous inconsistencies between the claimant's reported symptoms and the objective medi[c]al

evidence observed by other physicians." R. 26. Of perhaps greatest importance was the ALJ's reliance upon the consultative examination by Dr. Barry Lotman, conducted for Plaintiff's worker's compensation claim. R. 24.

Dr. Lotman, who is board certified in orthopedic and arthroscopic surgery, performed a consultative examination of Plaintiff on November 15, 2006. R. 386. He noted that Plaintiff had stopped work as a postal employee on August 8, 2006. *Id.*

Dr. Lotman's determination was constrained by the worker's compensation process. He worked from a "Statement of Accepted Facts." R. 386. Those accepted facts included an assumption that the postal motor vehicle accident on July 29, 1991, caused the injury to Plaintiff. *Id.* Dr. Lotman said that Plaintiff's injury "was accepted" "for a neck sprain/strain, lumbosacral sprain/strain and cervical intervetebral disc disorder with myelopathy at C5-6." *Id.* Dr. Lotman pointedly noted that Plaintiff had lumbar spinal stenosis at L3, L4, and L5, hypertension, pedal edema, and diabetes, which were "unrelated," that is, unrelated to the worker's compensation claim. R. 386. Dr. Lotman also noted that Plaintiff had "multiple level disc disease L3, L4 and L5," "lumbar radiculopathy," "morbid obesity," and "progressive hypertension," which were "not accepted conditions." *Id.* This appears to be Dr. Lotman's way of saying that those conditions did not qualify as work-related impairments for the worker's compensation claim.

Dr. Lotman mentioned a note from Dr. Michael Liuzzo, a chiropractic physician, that an MRI of Plaintiff's neck on May 13, 1992, revealed "a central disc herniation at C5 with additional pathology in the thoracolumbar spine." R. 386. He noted that an MRI on

February 4, 2003, demonstrated "mild spinal stenosis at L3, L4 and L5 with abnormal facet joints at L4 and bilateral foraminal stenosis at L4 and L5."  R. 387.  Dr. Lotman noted that "flexion and extension x-rays on the cervical spine done on 07/29/91 were read as demonstrating degenerative disc disease at C6."  *Id.*  He also noted that a June 13, 1992, MRI reported a "central disc herniation at C5 causing mild encroachment on the central canal with prominent degenerative disc disease and hypertrophic spurring."  *Id.*

Dr. Lotman concluded that Plaintiff had a probable fracture at C5-C6, disc herniation at C5, on the left, and congenital spinal stenosis.  R. 389.  He commented that the cervical MRI was "clearly abnormal."  *Id.*  He recommended an EMG/NCV test of Plaintiff's upper extremities.  R. 390.  He did not recommend the same test for Plaintiff's congenital spinal stenosis because it was not "accepted" that this was "causally related" to the 1991 work-related motor vehicle accident.  *Id.*

Dr. Lotman found no evidence of *sprain* of the muscles in Plaintiff's neck or lumbosacral region.  R. 390.  Instead, he found that Plaintiff's problems were due to a fracture at C5-C6 and "multisegmental spinal stenosis."  *Id.*  Having found that the problem was fracture at C5-C6, Dr. Lotman determined that Plaintiff had not had cervical myelopathy.  *Id.*  He noted that according to the November 8, 2006, MRI, Plaintiff had an old compression injury at C5-C6, with an annular bulge or herniation at that level on the left.  R. 389-390.  Dr. Lotman concluded that based upon Plaintiff's cervical disc herniation, he was no longer fit to perform the duties of a letter carrier.  He said:

> The claimant is fit to work an 8 hour day in a light duty or sedentary
> position *based solely on the Statement of Accepted Facts. However, even
> a sedentary/light duty position will aggravate his segmental spinal stenosis.*

R. 390 (emphasis added). Since he had found that Plaintiff's lumbosacral strain had resolved, he found no restrictions for muscular strain. *Id.* He did, however, state: "*there would be restrictions for his lumbosacral spine based on the segmental spinal stenosis if this is ever considered an accepted condition.*" *Id.* (emphasis added).

Dr. Lotman concluded that given the condition of Plaintiff's cervical spine, "it is unlikely that he will achieve anything other than temporary relief from pain management." R. 390. He recommended that Plaintiff go back to Dr. Stevenson and have an anterior cervical fusion and discectomy at C5. *Id.*

Two observations should be made here about Dr. Lotman's conclusions. First, Dr. Lotman focused entirely upon the injury caused by the work-related motor vehicle accident in 1991. He did not consider the combination of impairments arising from spinal pain from congenital spinal stenosis, diabetes, hypertension, and obesity. Second, even though limited, Dr. Lotman expressed considerable reservations about Plaintiff's ability to do light or sedentary work if his congenital segmental spinal stenosis were to be considered.

Along the way in his examination, however, Dr. Lotman found that Plaintiff had normal and symmetric strength and sensation in his upper extremities. R. 388. Tinel's[5]

---

[5] Tinel's sign is: "A tingling sensation in the distal end of a limb when percussion is made over the site of a divided nerve. It indicates a partial lesion or the beginning regeneration of the nerve." DORLAND'S MEDICAL DICTIONARY FOR HEALTHCARE CONSUMERS.

and Hoffman's[6] signs were negative.  *Id.*  A finding of vibratory sense diminution was determined to be evidence of symptom magnification as he thought that there was no possible anatomic cause for the finding.  *Id.*  Self-applied axial compression on standing did not create any lower back pain.  R. 389.  There was a moderate increase in lower back pain when standing with gentle truncal rotation, and this was thought to be evidence of symptom magnification because there was no anatomic explanation for this.  *Id.*  Straight leg testing for lower back pain was negative.  *Id.*  Dr. Lotman found no anatomic explanation for reported increased pain from sitting or supine, gentle internal and external rotation of the right lower extremity, for pain reported on external rotation of the left, and he found no anatomic explanation for marked asymmetry of increased sensation on the left to vibratory sense testing.  *Id.*  Dr. Lotman determined from his examination that Plaintiff's subjective complaints "clearly outweigh the objective physical findings with the exception of the cervical MRI which is clearly abnormal."  *Id.*  In other words, Dr. Lotman provided some evidence to discount Plaintiff's subjective descriptions of his debility.  That evidence, however, should have been considered along with all of the evidence, including the findings of Dr. Lotman discussed above and Dr. Montrichard's findings.

On November 30, 2006, Plaintiff was seen by James R. Patterson, M.D., board certified in physical medicine and rehabilitation, for electrodiagnostic testing of his upper extremities.  R. 353.  Plaintiff described pain in both arms, greater on the right, and numbness and tingling in his hands and arms.  *Id.*  On examination, Plaintiff had good

---

[6] Hoffmann's sign is a digital reflex of the fingers.  DORLAND'S MEDICAL DICTIONARY FOR HEALTHCARE CONSUMERS.

and symmetrical range of motion of his upper extremities, with no asymmetrical atrophy and normal strength. R. 354. Sensation was reduced throughout the entire right arm. *Id.* Dr. Patterson said that the nerve conduction studies showed "prolongation of both the right and left median motor latency, sensory latency, mid palm latency and interpeak latency with simultaneous stimulation of the median and radial nerves." R. 355. "Other values are all within normal limits." *Id.* The electromyogram of the muscles of the upper extremities was normal. *Id.*

Dr. Patterson determined that the results showed "a bilateral moderately severe entrapment of the right and left median nerve at the carpal tunnel," but with "no evidence of acute or chronic denervation of the right or left abductor policis brevis." *Id.* It was thought that Plaintiff might need surgical decompression of the right and left carpal tunnel. *Id.* Dr. Patterson found no evidence of cervical radiculopathy, plexopathy,[7] peripheral neuropathy, myopathy,[8] or motor neuron disease. R. 356.

On September 11, 2007, Dr. Montrichard wrote a letter to the Employment Standards Administration, Officer of Workers' Comp Program (OWCP). R. 421. An undated copy of this same letter was sent to the disability reconsideration branch of the office of personnel management, presumably within the Postal Service. R. 559.

Dr. Montrichard took issue with Dr. Lotman's opinion. R. 421, 559. She pointed out that Dr. Patterson determined that Plaintiff had documented carpal tunnel syndrome,

---

[7] Plexopathy is an injured or disordered condition of a plexus and especially a nerve plexus. MEDLINE PLUS (MERRIAM-WEBSTER).

[8] Myopathy is a disorder of muscle tissue or muscles. MEDLINE PLUS (MERRIAM-WEBSTER).

yet Dr. Lotman determined that Plaintiff was capable of lifting up the 40 pounds repetitively for up to 2 hours daily. *Id.* She said: "This level of non-restriction would certainly serve to aggravate the compressive neuropathy acknowledged by Dr. [Lotman]." *Id.* She also noted that although Dr. Lotman had recommended surgical intervention for Plaintiff's cervical disc herniation or fracture, Dr. Eric Gabriel, a Board Certified Neurosurgical Physician recommended against surgery in a consultation on July 1, 2003. *Id.* She said that Plaintiff elected not to have surgery, following the advice of Dr. Gabriel. R. 422, 560.

Dr. Montrichard further wrote:

Unfortunately, his [Dr. Lotman's] evaluation was very restricted as he did not pursue EMG or Nerve conduction studies of the Lumbar Sacral spine, despite previous MRI studies indicating both Spinal Stenosis and significant Multi-Level Disc disease. The complaint of recurrent lumbar spasms secondary to disc disease, as previously mentioned was acknowledged as an acceptable condition by OWCP. Please refer to the most recent radiological evaluation per Gainesville Open MRI report dated 11-08-2006. I also suggest review of the enclosed documents, which indicate numerous recommendations and interventions submitted from various Independent providers of Healthcare Services. These interventions were provided in attempt to relieve or lessen Mr. Stroud's debility. I refer in particular to the enclosed evaluation by Dr. Zhou dated March 26, 2007.

In response to your reference to lack of available documents demonstrating Mr. Stroud's involvement in ongoing Physical Therapy, I have included a summary of treatments rendered by Dr. Michael Liuzzo, which is enclosed for your reference.

FUNCTIONAL CAPACITY ASSESSMENT/FIT FOR DUTY evaluation, please refer to the evaluations performed by Independent Contractors-Southeastern Integrated Medical Group and also the most recent evaluation performed by Dr. [Liuzzo]. Most recently, I performed a functional evaluation on Mr. Stroud in Dec of 2006, which I have enclosed for your review and records. Mr. Stroud has suffered for recurrent headaches, which seems to occur with repetitive neck movements. There is one visit to the Emergency Room dated February 2005 for this symptom

documented beyond office visits.  As long as the patient maintain[s] control of his Hypertension, Diabetes and Pain levels, then his headaches are minimized in frequency.  I have also included copies of various assessments and work restrictions which I previously provided to the Managerial staff.

R. 422, 560.

On October 24, 2007, Dr. Montrichard wrote another letter to the Office of Worker's Compensation.  R. 526.  She said that Plaintiff's condition had not changed since January, 2007.  *Id.*  She repeated that Dr. Gabriel had recommended against surgery for Plaintiff's cervical disc herniation or fracture.  *Id.*  She said that Plaintiff is "permanently disabled and unemployable as a result of his injuries."  R. 527.  She said that while Plaintiff's pain medication had reduced his symptoms, "this medication contribute[s] to an altered mental state."  She said:

He is restricted to 15 [minutes] of driving, no repetitive movements at the wrist/elbow for more than 15 [minutes], pushing/pulling each limited to 10 pounds and not to exceed 2 hrs per day.  Lifting limited to 10 pounds not to exceed 2 hours per day.  No twisting, bending, stooping, squatting, kneeling or climbing.  No reaching above the shoulder and a limitation on walking no greater than 10 mins as further activity causes a recurrence of lumbar spasms.  Mr. Stroud need[s] to continue with physical therapy to prevent further decline in his physical state.

R. 527.

Defendant argues that Dr. Lotman's opinion was a part of the record, while Dr. Gabriel's opinion was not, and therefore the ALJ was justified in relying upon the opinion of Dr. Lotman, who was board certified in orthopedics.  Doc. 28, pp. 8-9.  This is not persuasive.  As Plaintiff discussed in his first argument, the Administrative Law Judge has a duty to develop the record.  "[T]here must be a showing of prejudice before we will find that the claimant's right to due process has been violated to such a degree that the

case must be remanded to the Secretary for further development of the record." Brown

v. Shalala, 44 F.3d at 935. The court should be guided by "whether the record reveals

evidentiary gaps which result in unfairness or 'clear prejudice.' " Id.; Graham v.

Apfel,129 F.3d at 1423. Prejudice exists here. Dr. Gabriel was board certified as a

neurologist, and Plaintiff's treating physician, Dr. Montrichard, relied upon Dr. Gabriel's

expertise and opinion that surgery was not recommended for Plaintiff. The opinion was

directly relevant to the question of whether to give Dr. Montrichard's opinion substantial

weight.

It may be assumed, however, that Dr. Gabriel in fact reached the opinion cited by

Dr. Montrichard. The opinion as to the efficacy of surgery for Plaintiff's disc herniation or

fracture in his cervical spine is strong objective medical evidence to support the opinion

of Dr. Montrichard. If the ALJ reasoned that Plaintiff's cervical condition could be fixed

with surgery, that was error as it is counter to the well-supported opinion of a treating

physician and a board certified specialist, Dr. Gabriel. Even Dr. Lotman said that "it is

unlikely that [Plaintiff] will achieve anything other than temporary relief from pain

management" for his cervical condition, if he did not have surgery. R. 390.

Moreover, analysis which focuses entirely on Plaintiff's cervical spine impairment

is incomplete. Dr. Lotman himself, though constrained by the "accepted facts" of the

worker's compensation process, said that Plaintiff had a serious impairment due to

congenital lumbosacral spinal stenosis, that is, in the thoracic and lumbar regions. As

noted above, Dr. Lotman said that "even a sedentary/light duty position will aggravate his

segmental spinal stenosis" and he said that "there would be restrictions for his

lumbosacral spine based on the segmental spinal stenosis if this is ever considered an accepted condition." R. 390. This is entirely consistent with Dr. Montrichard's view, that Dr. Lotman did not include Plaintiff's lumbosacral impairments in his determination of Plaintiff's residual functional capacity. Dr. Montrichard specifically cited a report by Dr. Zhou as supportive of her view that Plaintiff's lumbosacral problems were seriously debilitating, and she assigned the greatest permanent disability rating, 20%, to that condition.

On March 26, 2007, Dr. Zhou, a physician with Comprehensive Pain Management of North Florida, examined Plaintiff on a consultative basis. R. 545. Dr. Zhou said that Plaintiff presented with complaints of pain in his upper and lower back since 1992. *Id*. He said that the pain was worse from standing, walking, and lifting, but better with sitting and using a heating pad. *Id*. He noted that in 2004, Dr. Stevenson had recommended surgery, but Plaintiff declined. *Id*. Plaintiff had had physical therapy and lumbar epidural steroid injections, which raised his blood sugar and he could not have more steroid injections due to his diabetes. *Id*. and R. 548. On examination, Dr. Zhou found that Plaintiff had pain in his lower cervical spine, middle thoracic spine, and his entire lumbar spine. R. 547. The straight leg test was equivocal. *Id*. There was some decrease in sensation, but no motor weakness and strength was intact. *Id*. Dr. Zhou noted that an MRI of the lumbar spine showed diffuse spinal stenosis with disc bulge at multiple levels and neural foraminal narrowing. *Id*. Dr. Zhou's impression was low back pain, thoracic spine pain, and lower cervical spine pain. R. 548. Dr. Zhou again noted the surgical recommendation of Dr. Stevenson but concluded that surgical treatment was not

necessary. *Id.* Weight loss, exercise, and pain pills in moderation were recommended. *Id.* Thus, Dr. Montrichard is correct that Dr. Zhou's report supports her own conclusions.

The opinion of a claimant's treating physician must be accorded considerable weight by the Commissioner unless good cause is shown to the contrary. <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1997). This is so because treating physicians:

> are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2). Important to the determination of whether there is a "detailed, longitudinal picture" of impairments is the length of the treatment relationship, the frequency of examination, the extent of the knowledge of the treating source as shown by the extent of examinations and testing, the evidence and explanation presented by the treating source to support his or her opinion, the consistency of the opinion with the record as a whole, and whether the treating source is a specialist with respect to the particular medical issues. 20 C.F.R. § 404.1527(d)(2)-(5).

Dr. Montrichard had a long treatment relationship with Plaintiff. Dr. Lotman did not.

The reasons for giving little weight to the opinion of a treating physician must be supported by substantial evidence, <u>Marbury v. Sullivan</u>, 957 F.2d 837, 841 (11th Cir. 1992), and must be clearly articulated. <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1241 (11th Cir. 2004). "The Secretary must specify what weight is given to a treating physician's

opinion and any reason for giving it no weight, and failure to do so is reversible error."
MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

Reliance upon Dr. Lotman's opinion to give no weight to the treating physician's opinion was error for the reasons discussed above. Indeed, Dr. Lotman's opinion, viewed without the constraints of the worker's compensation process, was supportive of much of what Dr. Montrichard said.

Defendant suggests that Dr. Montrichard's opinion could be discarded because Plaintiff "was not entirely compliant with taking his prescribed medications." Doc. 28, p. 9. It is true that Plaintiff discontinued his medications several times, especially with respect to some pain medications and medications for diabetes. But this, standing alone, is not substantial evidence to fail to give substantial weight to the opinion of Dr. Montrichard. "The regulations provide that refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability. *See* 20 C.F.R. § 416.930(b). " 'A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling.' " Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988), *quoting* Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir. 1987). However, "[i]n order to deny benefits on the ground of failure to follow prescribed treatment, the ALJ must find that had the claimant followed the prescribed treatment, the claimant's ability to work would have been restored." *Id.* The ALJ did not make such a finding here. Therefore, the evidence that Plaintiff was sometimes not compliant with prescribed treatment is not substantial evidence in the record to give no weight to the opinion of Dr. Montrichard, the treating physician.

"Where the Secretary has ignored *or* failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." *Id.* (emphasis added); Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1217 (11th Cir. 1991); Critchfield v. Astrue, 2009 WL 635698 (N.D. Fla. Mar 10, 2009) (No. 308cv32-RV/MD); Cole v. Barnhart, 436 F.Supp.2d 1239 (N.D. Ala. 2006) (finding that the opinions of the treating physician must be accepted as true where the ALJ "did not properly refute them."). In this case, the Commissioner has not properly refuted the opinion of Dr. Montrichard, Plaintiff's treating physician, and this court must accept that opinion as true.

The ALJ determined that Plaintiff cannot perform his past relevant work as a letter carrier. R. 27. Thus, Plaintiff's claim is to be resolved at step 5. In 2007, Dr. Montrichard determined that Plaintiff could sit intermittently only 2 hours a day, could stand intermittently for only 15 minutes, and could not walk at all. These restrictions preclude all forms of work, including sedentary work for 8 hours a day.

**Conclusion**

Considering the record as a whole, the findings of the Administrative Law Judge were not based upon substantial evidence in the record and did not correctly follow the law. The decision of the Commissioner to deny Plaintiff's application for benefits should be reversed.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **REVERSED** and the Commissioner be **ORDERED** to grant Plaintiff's applications for benefits.

**IN CHAMBERS** at Tallahassee, Florida, on January 20, 2010.

s/     William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.